IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Case No. 12-42139-JJR13 |
| | ) | |
| Timothy Keith Latham and | ) | |
| Pamela Gail Latham, | ) | |
| | ) | |
| Debtors. | ) | |

## OPINION AND ORDER ON CLAIM OBJECTIONS

### Part I - Introduction

Several cases, including the one styled above, are before the court on debtors' objections, under Rule 3007,[1] to various claims and, for many of them, creditor responses. The claim objections all assert that the statute of limitations under applicable Alabama law expired before the claims were filed, and seek disallowance of the claims entirely. For one particular subset of claims, those representing medical debts incurred more than three but less than six years before the petition dates, the debtors argue that the debts are in the nature of open accounts under Alabama law, and that the applicable statute is therefore three years under Alabama Code 1975 § 6-2-37.[2] In response, the creditors contend that the debts are accounts stated, and the applicable statute is six years under Alabama Code § 6-2-34,[3] so none of the claims is time-barred.

---

[1] References to the "Code" or "Bankruptcy Code" refer to the United States Bankruptcy Code, 11 U.S.C. § 101, et seq. References to a "Rule" refer to a Federal Rule of Bankruptcy Procedure.

[2] Alabama Code 1975 § 6-2-37 reads in relevant part: "The following must be commenced within three years: (1) Actions to recover money due by open or unliquidated account, the time to be computed from the date of the last item of the account or from the time when, by contract or usage, the account is due."

[3] Alabama Code 1975 § 6-2-34 reads in relevant part: "The following must be commenced within six years: . . . (4) Actions founded on promises in writing not under seal; . . . (5) Actions for the recovery of money upon a loan, upon a stated or liquidated account or for

1

A second subset of claims and objections, which to some extent overlap with the first subset, include claims that were filed before confirmation in cases where the chapter 13 trustee has since made distributions on the claims pursuant to a confirmed plan (in some cases, the claims have been paid in full). Some of the claims were filed as long as two and a half years before the claim objections were filed, and almost all of the confirmed plans provided for a distribution on unsecured claims.[4]

As to this second subset of claims, the creditors (at least those creditors who responded to the objections)[5] maintain that principles of res judicata (if not laches) apply and require the allowance of those claims. The creditors also argue that the bar removal provision of Alabama Code 1975 § 6-2-16[6] resets the statute of limitation for those claims on which the trustee made payments.

---

arrears of rent due upon a parol demise; . . . (9) actions upon any simple contract or specialty not specifically enumerated in this section."

[4] It is worth noting that it was only upon realizing an additional financial incentive – the possibility of an award of attorney fees for prosecuting violations of the Fair Debt Collection Practices Act based upon the filing of stale claims in light of *In re Crawford*, 758 F.3d 1254 (11th Cir. 2014), *cert. denied*, ---U.S.---, 135 S. Ct. 1844 (U.S. 2015) – that the debtors' attorney first attempted to fulfill his responsibilities to object to the claims at issue, in most cases years after many of the claims were filed, and payments were made by debtors through plan payments to the trustee. The timing of the objections casts doubt upon whether the attorney would have ever performed his claim-review and objection duties required under this court's Local Rule 2016-1 had the benefit remained only to the debtors' bottom line rather than the attorney's. It is also worth mentioning that the trustee expressed little, if any, support for the objections.

[5] Not every creditor whose claims are dealt with in this Opinion and Order responded to the objections to their claims. However, in light of the prima facie validity of the claims under Rule 3001(f) and the statute of limitations being an affirmative defense (as further discussed herein), the debtors bear the burden of proving their objections even when no response in opposition was filed. The trustee provided information about payments made on the claims at issue regardless of whether the creditor responded.

[6] Alabama Code 1975 § 6-2-16 provides: "No act, promise, or acknowledgment is sufficient to remove the bar to an action created by the provisions of this chapter, nor is such evidence of a new and continuing contract, except a partial payment, made upon the contract by

2

The debtors did not object to the validity of the underlying debts other than to say the statute of limitations for filing suit to collect the debts has expired, which, if true, would mean a remedy was no longer available but would not mean the debts were no longer valid. *See Johnson v. Midland Funding, LLC,* 528 B.R. 462 (S.D. Ala. 2015), *appeal docketed*, No. 15-11240 (11th Cir. Mar. 24, 2015) (discussing legal enforceability of debt even when the debt is subject to statute of limitations defense). The debtors do not object to the form, amount, or content of any of the claims, including the claim attachments showing the dates services were incurred for the medical bills at issue and the amounts owing, and thus the claims are prima facie valid under Rule 3001(f). The objections rest entirely upon the statute of limitations.

### Part II - Open Account v. Account Stated

Pursuant to Bankruptcy Code § 502(a), a proof of claim is deemed allowed unless a party in interest objects. Rule 3002(f) provides that "[a] proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim." Under Alabama law the statute of limitations is an affirmative defense, and the party asserting an affirmative defense bears the burden to prove that defense. Ala. R. Civ. P. 8(c); *Stewart v. Brinley,* 902 So.2d 1 (Ala. 2004). *See also In re Johnson,* 2015 WL 128031, *5-*6 (Bankr. C.D. Cal. 2015) (recent case discussing burden of proof for rebutting prima facie validity of claim when the objector raises the statute of limitations, also an affirmative defense under California law). Accordingly, the debtors must negate the prima facie validity of the Rule-compliant, filed claims and demonstrate that the claims represent debts that would be barred from suit by the statute of limitations under Alabama law.

the party sought to be charged before the bar is complete or an unconditional promise in writing signed by the party to be charged thereby."

3

Initially, the debtors argue that the medical debts, incurred more than three but less than six years prepetition, are open accounts under Alabama law and are barred by the three-year statute of limitation. The responding creditors assert those debts are not open accounts, but instead are accounts stated and fall under Alabama's six-year statute of limitation.

Alabama case law provides the following guidance in analyzing the nature of the debts:

> An account stated is a post-transaction agreement. It is not founded on the original liability, but is a new agreement between parties to an original account that the statement of the account with the balance struck is correct and that the debtor will pay that amount. *Martin v. Stoltenborg,* 273 Ala. 456, 142 So.2d 257 (1962). It is as if a promissory note had been given for the balance due. *Ingalls v. Ingalls Iron Works Co.,* 258 F.2d 750 (5th Cir.1958).
>
> A prima facie case on an account stated is made when the plaintiff proves (1) a statement of the account between the parties is balanced and rendered to the debtor; (2) there is a meeting of the minds as to the correctness of the statement; and (3) the debtor admits liability. *Ingalls v. Ingalls Iron Works Co., supra; Barber v. Martin,* 240 Ala. 656, 200 So. 787 (1941). The debtor's admission to the correctness of the statement and to his liability thereon can be express or implied. An account rendered, and not objected to within reasonable time becomes an account stated, and failure to object will be regarded as an admission of correctness of the account. *Home Federal Savings & Loan Association v. Williams,* 276 Ala. 37, 158 So.2d 678 (1963); *Joseph v. Southwark,* 99 Ala. 47, 10 So. 327 (1891). Once the plaintiff proves his prima facie case, the burden of proof shifts to the defendant. *Barber v. Martin, supra.*

*Univ. of South Ala. v. Bracy*, 466 So. 2d 148, 150 (Ala. Civ. App. 1985) (discussing the requirements for an account stated, in the context of medical bills). The Eleventh Circuit has described Alabama's law on accounts stated as follows:

> An account stated is an agreement between parties who have had previous monetary transactions. *Karrh v. Crawford–Sturgeon Ins., Inc.,* 468 So.2d 175, 176. A prima face case is established when the plaintiff proves three elements: "(1) a statement of the account between the parties is balanced and rendered to the debtor; (2) there is a meeting of the minds as to the correctness of the statement; and (3) the debtor admits liability." *Univ. of South Alabama v. Bracy,* 466 So.2d 148, 150 (Ala.Civ.App.1985) (citing *Ingalls v. Ingalls Iron Works Co.,* 258 F.2d 750 (5th Cir.1958)). An account stated claim is founded not on the original liability between parties, "but rather on the defendant's admission (which can be express or implied) that a definite sum is due." *Karrh,* 468 So.2d at 176.

4

*Compass Bank v. Limon*, 464 Fed. Appx. 782, 785 (11th Cir. 2012). *See also In re Pritchett,* 2006 WL 3103161 (Bankr. N.D. Ala.) (discussing open accounts versus accounts stated, and the significance of a rendering of the account, in the context of a credit card agreement, citing *Bracy* and other Alabama cases).

The debtors offered no evidence that the medical debts had not been incurred and billed in the ordinary course of events.  In fact, some claims included charges for multiple visits, and the debtors admitted that the charges for services rendered within three years before their bankruptcy cases were filed would not be barred under any circumstances.  For example, with regard to claim 14 in the *Hammon* case, Case No. 13-40433-JJR13, and the objection thereto at Doc. 69, debtors' counsel admitted at the hearing that the charges shown for medical services rendered less than three years prepetition were proper but insisted the amounts shown for the older medical visits should be disallowed as beyond the statute and stale.   In those cases where there were some charges for services rendered less than three years prepetition and some for services rendered more than three years prepetition, this admission alone establishes that the medical debts were each distinct obligations, each incurred when a discrete set of services were provided, and each rendered by billings in the ordinary course of events after each service was provided.  The attachments to the claims support this interpretation as well.   The medical debts were not just entries in a single, ongoing, open account with a changing balance that had not been rendered when the case was filed.  Otherwise there would be only one account, i.e. the "open account" at issue, and it would be impossible to separate, for statute of limitations purposes, charges incurred at certain times from the whole of the single open account obligation.

However, the court need not rest on that admission to decide the matter. Even for the claims supported by only one service date, the result is the same. The objecting debtors have

5

offered no evidence whatsoever that the debts are in the nature of open accounts to defeat the claims' prima facie validity. When asked to explain his position at the hearing, debtors' counsel responded that the medical debts should be treated as open accounts because there were no signed contracts, and if these debts were treated as accounts stated, that could mean that any debt that was originally an open account (assuming these originally were) could be converted into an account stated if certain steps were taken. Creditors' counsel countered that the debtors' attorney's statement regarding the possibility of converting an open account into an account stated, by rendering a statement showing the charges and receiving no objection to those charges, was, in fact, an accurate pronouncement of Alabama law, and the court agrees.

The court finds that the debtors have not met their burden of proving that the medical debts were open accounts, and therefore barred by the statute of limitations when the cases were filed. No evidence was offered that the medical debts at issue had proceeded in any manner other than the ordinary course for the provision of, and payment for, medical services. The debtors did not dispute that the services were provided on the days and in the amounts as shown on the claims' attachments. The debtors did not allege, and did not attempt to prove, that they were not billed for those services in proximity to their provision, nor did they allege that any of the bills were ever disputed after they were received. Many of the debts were scheduled by the debtors as undisputed in the exact or higher amount than that for which claims were filed (as was the case, for example, with claims 3 and 4 in the *Perry* case, Case No. 12-41504-JJR13). The debtors offered no evidence to substantiate the treatment of the medical bills as open accounts, in contravention of the treatment of the accounts as distinct obligations, incurred at different times and for each of which the amount owing had been rendered without regard to the other obligations, as shown on the claim attachments. In short, the debtors have not rebutted the prima

6

facie validity of the claims in any fashion. Therefore, as to the nature of the medical debts, the court finds those debts are not open accounts but are accounts stated, and are not barred by the applicable six-year statute of limitations. Accordingly, the following objections are hereby overruled, and the claims allowed as filed:

| Case No. | Debtor's Name | Claim No. | Creditor | Objection Doc. No. |
|---|---|---|---|---|
| 12-41504 | Perry | 3 | Quantum3 Group | Doc. 73 |
| 12-42047 | Bowers | 4 | Quantum3 Group | Doc. 72 |
| 12-42047 | Bowers | 5 | Quantum3 Group | Doc. 73 |
| 12-42047 | Bowers | 6 | Quantum3 Group | Doc. 74 |
| 12-42139 | Latham | 9 | GRMC c/o PASI | Doc. 90 |
| 12-42161 | Neely | 6 | GRMC c/o PASI | Doc. 50 |
| 13-40433 | Hammon | 14 | Franklin Collec. | Doc. 69 |
| 13-41787 | Johnson | 3 | GRMC c/o PASI | Doc. 37 |
| 13-42119 | Hotchkiss | 8 | DRMC c/o PASI | Doc. 55 |
| 14-40812 | Fail | 10 | GRMC c/o PASI | Doc. 40 |


### Part III - Effect of Payments by Trustee Pursuant to Confirmed Plans

The second subset of claims includes some of the medical claims that fell within the three-to-six-year window prepetition – more than three years but less than six years old – as well as older medical and credit card claims that were indisputably stale and showed on the face of the claims that they were subject to a statute of limitations challenge when they were filed, but which have since received a distribution from the trustee under confirmed plans. As to those claims, regardless of their age, on which the trustee made payments, the creditors contend that partial payments (and in some cases, full payment) by the trustee removed the statute of limitations' bar pursuant to Ala. Code 1975 § 6-2-16. The creditors contend further that for those claims filed preconfirmation, the plan language that provided the debtors would pay some dividend toward unsecured claims qualified as an "unconditional promise in writing signed by the party to be charged" sufficient to extinguish the bar under that same bar-removal Alabama

7

Code provision.  Finally, the creditors argued that the confirmed plans are res judicata as to the statute of limitations argument against claims filed preconfirmation, or if not, then laches should apply and bar any defense.  The court will address each contention in turn.

### a. Alabama Code 1975 § 6-2-16: Partial Payment

Alabama Code 1975 § 6-2-16 provides:

> No act, promise, or acknowledgment is sufficient to remove the bar to an action created by the provisions of this chapter, nor is such evidence of a new and continuing contract, except a partial payment, made upon the contract by the party sought to be charged before the bar is complete or an unconditional promise in writing signed by the party to be charged thereby.

Under the unambiguous language of § 6-2-16, a partial payment must be made "before the bar is complete" in order to remove the bar.  The payments by the trustee as to the indisputably stale subset of claims were all made after the cases were filed, and after the statute of limitations of six years had run, so that the bar was, in fact, complete when the cases were filed.  What has been lost in the creditors' argument is that partial payments made *after* the bar of the statute of limitations is in place do not remove the bar.  *Chapman v. Barnes*, 93 Ala. 433, 9 So. 589 (Ala.1891).  This critical statutory provision regarding the timing of the payments at issue, completely missing from the creditors' submission and also completely unaddressed by the debtors in response, is fatal to the creditors' argument on this ground as to the indisputably stale claims.  Thus, those claims are not saved from the effect of the statute by virtue of payments made after the bar was complete.

8

### b. Alabama Code 1975 § 6-2-16: Unconditional Promise in Writing

Alternatively, the creditors asserted that for those claims on which payments were made pursuant to confirmed chapter 13 plans, the language in the plans that provides for some percentage payment to the unsecured claimholders is an unconditional promise in writing signed by the party to be charged, and is therefore sufficient to remove the bar. The court disagrees. In the case of *Chapman v. Barnes, supra*, the Supreme Court of Alabama examined letters written and signed by the parties to be charged in which they acknowledged the debt, were specific as to amount, and expressed a desire and expectation to pay the debt, further showing a desire and a willingness to pay the debt after a time and containing a proposal for how the payment could be accomplished. *Id*. at 590. However, despite specifically acknowledging the debt and a willingness to pay it along with a future payment proposal, the letters did not rise to the level of an *unconditional promise* to pay the debt, and did not "import the written absolute undertaking to pay the debt required to a removal of the bar of the statute." *Id*.

The provisions of a chapter 13 plan are similar. It is true that chapter 13 plans are in writing and are signed by debtors. Once confirmed, a plan's provisions become binding on the debtor, creditors, and the trustee. Code § 1327(a). Those provisions are not, however, a new *unconditional promise* by debtors to pay those creditors who filed their claims preconfirmation. The commitments of debtors under chapter 13 plans, even if they could be construed as "promises" between the debtors and creditors, are "conditional."

As a demonstration of the nature of the commitments by debtors under confirmed chapter 13 plans, consider the consequences of default. If a chapter 13 debtor defaults under a confirmed plan, creditors do not have a breach of contract cause of action for the amounts that remained owing under the plan – which may be a fraction of the original debt – but instead creditors may

9

move to dismiss the case, and if the case is dismissed, the debtor will be denied the continued benefits of chapter 13, including the automatic stay and discharge upon completion of plan payments. This stands in contrast to the effect of confirmation in a non-individual chapter 11 reorganization case, in which the discharge is entered at confirmation and the provisions of the confirmed plan become the new contract between the debtor and its creditors. *See In re Troutman Enters.*, 253 B.R. 8 (6th Cir. B.A.P. 2000) (discussing the effect of Code § 1141 and the fact that a state law breach of contract claim may be brought for a default under a confirmed chapter 11 plan); *see also In re Nylon Net*, 225 B.R. 404, 406 (Bankr. W.D. Tenn. 1998) ("The chapter 11 plan becomes a binding contract between the debtor and its creditors, and governs their rights and obligations."). Other than a hardship discharge satisfying the conditions of Code § 1328(b) with the limitations of § 1328(c), a chapter 13 debtor does not receive a discharge unless and until all plan payments are completed – Code § 1328(a) – and in neither event is a new contract created between the debtor and creditors by virtue of the plan or confirmation order.

While state statutes of limitations may be extended against the debtor and co-obligors in certain circumstances when bankruptcy intervenes (*see* Code § 108(c)),[7] there is no similar Bankruptcy Code provision that resets the clock at confirmation for a new statute of limitations period under state law for debts provided for in the plan. The Code's provision for an extension

_____

[7] In pertinent part, Code § 108(c) provides:
   (c) [I]f applicable nonbankruptcy law [e.g. statute of limitations] . . . fixes a period for commencing or continuing a civil action . . . on a claim against the debtor, or against an individual . . . protected under section 1201 or 1301 . . . and such period has not expired before the [petition date] . . . then such period does not expire until the later of –
    (1) the end of such period, including any suspension of such period occurring on or after the [petition date]; or
    (2) 30 days after notice of the termination or expiration of the stay under section 362, 922, 1201, or 1301 . . . .

under certain circumstances is further evidence that the plan does not create a new, unconditional promissory obligation sufficient to start the state statute clock ticking anew at confirmation. If that were the case, there would be no need for Code § 108(c) to extend state statutes of limitations that would otherwise expire during the case.

In contrast to an unconditional promise to repay debts, chapter 13 plan provisions are the debtors' proposals for dealing with debts, much like the proposal letter at issue in *Chapman v. Barnes, supra*, and that proposal when approved by the court is binding on all parties by virtue of the confirmation order. But the plan's repayment proposal, even after confirmation, is always conditioned upon the debtor receiving the benefits of chapter 13. In the event the case is dismissed and those benefits are lost, the plan and its order of confirmation no longer have a binding effect on the debtors or anyone else as to payments that have not yet been made. *See In re Parrish*, 275 B.R. 424 (Bankr. D. Col. 2002) (discussing how chapter 13 dismissal terminates debtor's obligation to make future plan payments but does not vacate the effect of the confirmation order as to past payments already made). Default under a confirmed plan is not a breach of an unconditional written promise; it is a failure to perform as proposed and as ordered in exchange for the potential discharge and other plan-completion benefits. Thus, provisions in confirmed chapter 13 plans to pay all or a percentage of unsecured claims are not unconditional promises or new contracts sufficient to remove the bar from the otherwise stale claims under Ala. Code § 6-2-16.

### Part IV - Finality of Confirmed Plans

Although the provisions of confirmed plans are not unconditional new promises to pay debts, they are nonetheless binding. It is well-established law in the Eleventh Circuit that,

Case 12-42139-JJR13    Doc 101    Filed 08/06/15    Entered 08/06/15 13:48:43    Desc
Main Document      Page 11 of 22

pursuant to Code § 1327, chapter 13 confirmation orders are final judgments on the merits of issues that were, or could have been raised at confirmation. "Confirmation of a Chapter 13 plan by a bankruptcy court of competent jurisdiction, in accordance with the procedural requirements of notice and hearing of confirmation, 'is given the same effect as any district court's final judgment on the merits.'" *Universal American Mort. Co. v. Bateman (In re Bateman)*, 331 F.3d 821, 830 (11th Cir. 2003) (quoting *In re Justice Oaks II, Ltd.*, 898 F.2d 1544, 1550) (11th Cir. 1990)). Claim Preclusion under § 1327 is broader than common law issue preclusion insofar as it covers not only matters that were raised, but also every claim *that could have been raised at confirmation*. *Id.* at 830 (emphasis added).

In *Bateman*, the Eleventh Circuit analyzed a secured mortgage creditor's obligation to timely object to a chapter 13 plan containing provisions that were contrary to the creditor's claim and violated Code § 1322, but most significantly the court addressed the timing of a trustee's postconfirmation objection to the creditor's claim that had been filed before confirmation. The circuit court explained that under Rule 3001, the claim was prima facie evidence of the validity and amount of the claim unless there was an objection pursuant to Code § 502. "Although § 502(a) does not provide for a time limit to file an objection, it must be filed *prior to* plan confirmation." *Id.* at 827 (citing *Justice Oaks II*, 898 F.2d at 1553) (emphasis in original). The trustee in *Bateman* did not object to the claim until over a year after confirmation. "'To allow the Debtor to object, months after the plan has been confirmed, would contradict the 'finality' objective of the confirmation process and would overlook the express language of section 1327(a) of the Bankruptcy Code.'" *Id.* at 828 (quoting *In re Starling*, 251 B.R. 908, 910 (Bankr. S.D. Fla. 2000)). Unlike the instant cases wherein only general unsecured claims are at issue, the claim in *Bateman* was a secured debt, specifically listed in the plan, in an amount at odds

12

with the filed claim, which created an inconsistency that needed to be resolved, "but a debtor's post-confirmation objection [was] not the appropriate vehicle by which to do so." *Id.* at 828.

Similarly, it was years after confirmation that the creditor in *Bateman* objected to its plan treatment, and the circuit court found that although a timely objection to confirmation would have no doubt succeeded, the creditor had waited too late to assert itself and was precluded from then raising an issue (i.e., the motion to dismiss for failure of the plan to comply with the Code's requirements) that it could have asserted at confirmation. "Because it did not vindicate its rights at the appropriate stages of the Chapter 13 process, however, [the creditor] cannot now argue for a dismissal of the petition at its near conclusion without assuming some responsibility for letting the discrepancy go this far unchallenged." *Id.* at 833. The end result in *Bateman* was that the creditor waited too late to object to its plan treatment and the trustee waited too late to object to the creditor's claim. "[The creditor's] proof of claim and the Plan's listed distribution amount, however improper, was within the definition of claim preclusion because it very well might have been and, as we have articulated should have been, presented . . . prior to the Plan confirmation." *Id.* (citing *Starling*, 251 B.R. at 910). The creditor and trustee were both precluded by the confirmation order from raising their respective objections well into the case, despite the merits of the arguments raised by each had they been asserted prior to confirmation.

The Eleventh Circuit again visited principles of res judicata and the effect of Code § 1327 in *Hope v. Alcorn*, 731 F.3d 1189 (11th Cir. 2013), and clarified that § 1327 binds not only debtors and creditors as the statute specifies, but also the chapter 13 trustee. In *Hope*, the trustee was aware, prior to confirmation, of defects in the perfection of a creditor's security interest. The creditor filed a secured claim, and the plan that was confirmed proposed to pay the claim as

13

secured.  The trustee objected to neither the claim nor the plan, but then filed an avoidance action post-confirmation, seeking to avoid the unperfected security interest.

In its analysis, the circuit court acknowledged, "Significantly, the bankruptcy terrain we traverse is not pristine."  *Id.* at 1193.  The court then described its holding in *Justice Oaks II* as requiring that an objection by a creditor to another creditor's claim on grounds that the chapter 11 plan misclassifies the claim, must be made before confirmation.  The court stated that both *Justice Oaks II* and the case cited therein, *Simmons v. Savell (In re Simmons)*, 765 F.2d 547 (5th Cir. 1985), "hold that the ability to object to a claim generally evaporates upon the bankruptcy court's confirmation of the plan."  *Hope*, 731 F.3d at 1194.  The court then explained its holding in *Bateman* on the basis of the res judicata effect of a confirmed chapter 13 plan.  Given that the trustee in *Hope* had the information needed to form the basis for her objection to the creditor's claim well in advance of confirmation, but failed to object either to the classification of the claim as filed or to the plan that provided for the claim's payment as secured, the trustee was bound by confirmation and could not raise the issue in a post-confirmation avoidance adversary proceeding.[8]

Importantly, the *Hope* panel's reliance on *Bateman* and *Justice Oaks II* confirmed their continuing validity despite the fact that many chapter 13 confirmations now take place before the proof of claim bar date, although the circuit court stressed that its holding was narrow and did not address what difference might be made had the trustee become aware of the defect in perfection only after confirmation.  *Id.* at 1195.  More significantly for the objections now before

---

[8] In *Hope*, the trustee's objection was not a "validity" or "amount" objection, but rather was an objection based on classification and was nonetheless barred by principles of res judicata. Res judicata must, then, be broader in scope than Rule 3001(f), which addresses the prima facie evidentiary effect as to validity and amount, but not classification.

14

this court, none of the controlling case law deals specifically with what effect, if any, the confirmation order had on the ability to mount a post-confirmation challenge to a general unsecured claim filed pre-confirmation, where the claim disclosed on its face that it was subject to a statute of limitations objection, and more particularly, when the confirmation order confirmed a plan that provided for some distribution to the holders of unsecured claims.[9] Such is the terrain that we must now navigate.

This court skirted the edges of this territory in *Graves v. First Educators Credit Union (In re Graves)*, 2007 WL 824059 (Bankr. N.D. Ala. 2007). In *Graves* this court stated: "A general, unsecured claim, unlike a secured claim, is not specifically dealt with under most plans. Thus, it would be difficult to justify a blanket rule that recognizes *res judicata* as a defense to all post-confirmation objections to unsecured claims filed pre-confirmation." The court also discussed the possibility that early confirmation under the Code amendments of 2005 (commonly referred to as "BAPCPA") might modify the rulings in *Bateman* and *Justice Oaks II*, but *Hope* has since ratified their continuing viability. Regardless, the court is not proposing a blanket rule here, but is focusing on the facts in the cases before it wherein many months, and in some cases years, have elapsed and many payments, in some cases payment in full, have been made in reliance on the debtors' failure to object to the unsecured claims.

A recent Fourth Circuit decision addressed a similar, but distinct, issue and maps a bit of the path through the effect of confirmation on general unsecured claims filed pre-confirmation, at least when the confirmed plans provide for pro rata payment on all allowed unsecured claims and

_____

[9] In the context of chapter 13, a claim is "provided for in the plan" if the plan "'makes provision' for, 'deals with,' or even 'refers to' a claim." *Rake v. Wade*, 508 U.S. 464, 474 (1993) (citations omitted). A plan that proposes to pay zero percent to unsecured claimholders does, in fact, "provide for" unsecured claims, *see Lawrence Tractor Co. v. Gregory (In re Gregory)*, 705 F.2d 1118, 1123 (9th Cir. 1983); the same would certainly be true for plans that propose a distribution, even a *de minimis* amount, to unsecured creditors.

15

payments have in fact been made on the claims. In *Covert v. LVNV Funding, LLC*, 779 F.3d 242 (4th Cir. 2015), the court found that the res judicata effect of the confirmed plans, which in each case provided for pro rata distribution to unsecured claimholders, prevented a post-confirmation class action lawsuit against the unsecured claimants whose claims were filed before confirmation. In *Covert*, the basis of the class action was that claims were filed in the bankruptcy cases by claimants who were not licensed as debt collectors under state law, which in turn violated the Fair Debt Collection Practices Act and similar state statutes. Under principles of claim and issue preclusion, the action was barred because in order to prevail, the plaintiffs would have to show that the consumer protection statutes at issue "prohibited the Defendants from filing the proofs of claim." *Id.* at 247. "A finding for the Plaintiffs on any of these claims, therefore, would entail a holding that the Defendants' proofs of claim are invalid, which would directly contradict the bankruptcy court's plan confirmation order approving those proofs of claim as legitimate." *Id.*

Similarly, a ruling for the debtors in the instant cases would necessitate a finding that the unsecured claims at issue are not allowed claims despite the fact that the plans were confirmed years past, and payments have been made on those claims.[10] Such a ruling would contradict in our cases not only the plans' provisions to pay something on unsecured claims that have been allowed for quite some time, but also askew payments that were previously made under the plans, in some instances up to 100% of the claims, since the plans were confirmed. The trustee and the affected creditors have relied upon the binding effect of the confirmed plans in making and accepting those payments.

---

[10] "Moreover, allowing these kinds of post-confirmation collateral attacks on a bankruptcy plan's terms would 'destroy the finality that bankruptcy confirmation is intended to provide.'" *Covert*, 779 F.3d at 249 (quoting *Adair v. Sherman,* 230 F.3d 890, 895 (7th Cir. 2000)).

16

The court in *Covert* went further:

> The Plaintiffs, as debtors in their own bankruptcy proceedings, could have objected to [the creditor's] proofs of claim at the time they were filed on the basis that they violated these consumer protection statutes. … Here, Plaintiffs do not assert that any information necessary to make out their statutory claims were unavailable to them at the time their plans were confirmed. Accordingly, Plaintiffs should have raised these statutory claims during the plan confirmation hearings, and their failure to do so means that these claims are barred by res judicata.

*Id.* at 247-48. The same analysis applies here, particularly when the basis for the objection is the expiration of the statute of limitations, a fact easily gleaned from information contained in the proofs of claim. Explaining the policy supporting its ruling forbidding post-confirmation challenges via separate proceeding to the validity of claims filed pre-confirmation but not objected to before confirmation, the Fourth Circuit focused on the importance of not only encouraging debtors to act timely to bring possible statutory damages assets into the estate, but also the overarching policy of finality and the line in the bankruptcy sand that is drawn by the confirmation order. "Were we to hold that proofs of claim are subject to post-confirmation challenge, we would risk undermining" those "two fundamental aims of the bankruptcy process." *Id.* at 248.

Distinguishing its precedent that allows a creditor to mount a postconfirmation challenge to a plan's reclassification of a secured claim to unsecured, because an action to determine the validity of a lien must be brought by adversary proceeding and is therefore not part of the confirmation process, the Fourth Circuit in *Covert* emphasized that its earlier decision in *Cen-Pen Corp. v. Hanson*, 58 F.3d 89 (4th Cir. 1995) should not be read as establishing a blanket rule that plan confirmation can have no preclusive effect as to any issue that must be brought via adversary proceeding. *Cen-Pen* was decided based on Code § 502(d)(2) and the general rule that liens pass through bankruptcy unaffected, unless and until the debtor takes an affirmative step in

17

addition to the plan to attempt to void them via adversary proceeding. However, there is no such procedural safeguard or "pass through" rule when dealing with unsecured claims: "There is no analogous rule or statute establishing that claims challenging the filing process pass through bankruptcy unaffected, nor any rule that unsecured claims pass through bankruptcy unaffected. Indeed, the opposite is true." *Id.* at 249. That the debtors in *Covert* were "challenging the *process* used to collect an *unsecured* claim" and that the process at issue was the bankruptcy itself supported a finding of res judicata when the challenge could have been raised before or at confirmation, but was not raised until after confirmation was final. *Id.* (emphasis in original). *But see In re Hale*, 359 B.R. 310 (Bankr. E.D. Wash. 2007) (confirmed chapter 13 plan was res judicata as to treatment, but not allowance, of claims) (citing *Shook v. CBIC (In re Shook)*, 278 B.R. 815 (9th Cir. BAP 2002) which specifically declined to follow the guidance of the Eleventh Circuit in *Justice Oaks II* on the preclusion issue).

A finding of preclusion is further supported by the identity of the party being bound by the effect of the confirmed plan on preconfirmation claims: to-wit, the debtor. "Any such concerns over the notice necessary before altering the rights of third parties are inapplicable here, where the Plaintiffs seeking relief from the confirmation orders are the debtors *themselves*, and they clearly suffered from no lack of notice of the claims against them." *Covert*, 779 F.3d at 250. In the cases before this court, and under the circumstances set out above, the provisions of the confirmed plan, and the fact that payments have been made and accepted over a significant period of time in accordance with that plan, preclude the objections based on grounds that were patently obvious when the claims were filed preconfirmation; those objections should and could have been raised before or in conjunction with confirmation. Accordingly, the following objections are hereby overruled, and the claims allowed as filed:

18

| Case No. | Debtor's Name | Claim No. | Creditor | Objection Doc. No. |
|----------|---------------|-----------|----------|---------------------|
| 12-40968 | Templeton | 6 | Quantum3 Group | 98 |
| 12-40968 | Templeton | 7 | Quantum3 Group | 99 |
| 12-41504 | Perry | 3 | Quantum3 Group | 73 |
| 12-41585 | Stevens | 2 | Jefferson Capital | 88 |
| 12-42349 | Jones | 12 | Quantum3 Group | 37 |
| 12-42356 | Collom | 1 | Quantum3 Group | 66 |
| 12-42356 | Collom | 2 | Quantum3 Group | 67 |

### Part V - Laches

Alternatively to a finding of preclusion for the claims filed before confirmation, and in every case in which the claims were filed after confirmation and payments have been made by the trustee, it has simply been too long, and too many parties have relied too much upon the debtors' inaction to now reward the debtors' delay by disallowing the claims. The doctrine of laches is an essentially equitable doctrine resting upon two elements: "(1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense." *Costello v. United States*, 365 U.S. 265, 282 (1961). The Eleventh Circuit has explained laches in the bankruptcy context as follows:

> The equitable doctrine of laches "bars a plaintiff from maintaining a suit if he unreasonably delays in filing a suit and as a result harms the defendant." *Amtrak v. Morgan,* 536 U.S. 101, 122 S.Ct. 2061, 2077, 153 L.Ed.2d 106 (2002). "To establish laches, a defendant must demonstrate (1) a delay in asserting a right or a claim, (2) that the delay was not excusable, and (3) that there was undue prejudice to the party against whom the claim is asserted." *AmBrit, Inc. v. Kraft, Inc.,* 812 F.2d 1531, 1545 (11th Cir.1986); *see also In re Sly,* 305 B.R. 67, 71 (Bankr.N.D.Fla.2003) (citing *AmBrit, Inc.* and analyzing a laches claim in the context of a bankruptcy proceeding).

*General Lending Corp. v. Cancio*, 578 Fed. Appx. 832, 834 (11th Cir. 2014).

The prejudice that can form the basis of a laches determination is more than a showing that allowing the objections to be sustained would harm another (such as the claimholders). "This is a misunderstanding of what [prejudicial] means . . . . To say that an error is prejudicial

19

means not that if the error is corrected someone will lose, which is almost always true, but that the error itself imposed a cost, as by misleading someone." *Matter of Stoecker*, 5 F.3d 1022, 1028 (7th Cir. 1993). Here, the debtors' "error," if it could be called such, and lack of diligence in neglecting to raise any objection to the claims until well into the life of the cases and after payments have been made has indeed imposed a cost and has "misled" the trustee into making payments and the creditor into accepting and applying those payments.

Disallowance this far into the case will raise other issues, such as the propriety of recovering the amounts paid from the creditors and re-distributing the recovery to other allowed claimants, and adjusting plan percentages or bases as may be required. It is not equitable to allow the debtors to create such problems for the other parties affected when the failure to object in a reasonable time is completely without excuse. *See, e.g., Shook,* 278 B.R. 815 (debtors were barred by laches from objecting to creditor's claim over four years after confirmation, and after distributions had been received by the creditor). The prejudice that would result to the creditors, and possibly to the trustee, if the objections were sustained under these circumstances outweighs any harm to the debtors and other creditors in their cases who also had the opportunity to object to the claims but did not do so.

Accordingly, the objections to the following claims are overruled based on laches, and the claims are allowed as filed:

| Case No. | Name | Claim No. | Creditor | Objection Doc. No. |
|----------|------|-----------|----------|--------------------|
| 12-40968 | Templeton | 6 | Quantum3 Group | 98 |
| 12-40968 | Templeton | 7 | Quantum3 Group | 99 |
| 12-40968 | Templeton | 17 | Jefferson Capital | 102 |
| 12-41504 | Perry | 3 | Quantum3 Group | 73 |
| 12-41585 | Stevens | 2 | Jefferson Capital | 88 |
| 12-42139 | Latham | 9 | GRMC c/o PASI | 90 |
| 12-42161 | Neely | 6 | GRMC c/o PASI | 50 |
| 12-42349 | Jones | 12 | Quantum3 Group | 37 |

| 12-42356 | Collom | 1 | Quantum3 Group | 66 |
|-----------|--------|---|----------------|-----|
| 12-42356 | Collom | 2 | Quantum3 Group | 67 |
| 13-41787 | Johnson | 3 | GRMC c/o PASI | 37 |

### **Part VI - Conclusion**

For those claims[11] where the underlying debts were incurred more than three, but less than six years before the petition date, for naught proven by the debtors and per the court's own analysis, they are best designated as accounts stated that are subject to Alabama's six-year statute of limitations, and not the three-year statute barring claims on open accounts. Accordingly, the reason for overruling the objections is simple enough: The debts remain enforceable under applicable state law and, therefore, the claims should be allowed under Code § 502(b).

Regarding claims[12] filed pre-confirmation but not objected to until several months, and in most instances years, following confirmation, the court is not fashioning a blanket rule that any unsecured claim filed preconfirmation cannot be objected to post-confirmation, but instead is setting out a narrow holding that in these cases, where: (1) the unsecured claims were filed preconfirmation, (2) the debtors' plans provided for payments to unsecured claimholders, (3) the plans were confirmed and payments commenced, (4) the grounds for the objections were patently obvious on face of the claims as filed, (5) no objection was made until several months, if not years following plan confirmation and commencement of payments, and (6) most importantly, there is no apparent justification for the delay in filing the objection, then an objection based on the statute of limitations will be precluded by virtue of the res judicata effect

---

[11] Claims listed in the schedule appearing *supra* at the end of Part II.

[12] Claims listed in the schedule appearing *supra* at the end of Part IV.

Case 12-42139-JJR13   Doc 101   Filed 08/06/15   Entered 08/06/15 13:48:43   Desc
Main Document     Page 21 of 22

of plan confirmation. Further, the court concludes that the doctrine of laches will defeat objections to claims[13] where, although res judicata is not applicable because the claims were filed postconfirmation, the statute of limitations defense was apparent on the face of the filed claim but the objection was not raised within a reasonable time after the claims were filed, especially where several plan payments were made and distributed to creditors.[14]

So DONE and ORDERED, this 6th day of August 2015.

/s/ James J. Robinson
JAMES J. ROBINSON
Chief United States Bankruptcy Judge

---

[13] Claims listed in the schedule appearing *supra* at the end of Part V.

[14] While the objections that are overruled based on the res judicata effect of plan confirmation would also be defeated because of laches, the objection to claim 17 filed by Jefferson Capital in the *Templeton* case – a 2012 case – is the only objection that is overruled based solely on laches.

Case 12-42139-JJR13   Doc 101   Filed 08/06/15   Entered 08/06/15 13:48:43   Desc
Main Document       Page 22 of 22